Filed 7/30/14  P. v. Goree CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER LEVI GOREE,<br><br>    Defendant and Appellant. | B243403<br><br>(Los Angeles County<br>Super. Ct. No. BA245379) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lance A. Ito, Judge.  Affirmed in part, reversed in part, and remanded for resentencing.

Janyce Keiko Imata Blair, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., Shawn McGahey Webb and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Christopher Levi Goree, appeals the sentence he received following his conviction for special circumstances murder (during commission of a rape) and forcible rape. He was sentenced to state prison for a term of life without possibility of parole.

The judgment is affirmed in part, reversed in part, and remanded for resentencing.

## BACKGROUND

1. *The crime*.

When defendant Goree was 17 years old he committed an extremely brutal rape and murder. The victim was Dr. Josephine Tan.

Dr. Tan emigrated from the Philippines in the late 1980's. She had practiced there as a pediatrician and was preparing to take a qualifying examination so she could practice in California. Tan was in her forties, weighed 97 pounds and was five feet tall. In November 1993, Goree attacked Tan as she was crossing a pedestrian footbridge over the 110 freeway in Torrance. Goree weighed about 165 pounds and stood six feet, three inches tall.

Tan's naked body was discovered supine, her arms and legs stretched apart. She had sustained two skull fractures, which rendered her unconscious. Parallel markings indicated she had then been dragged from the footbridge to a concrete drainage ditch adjacent to the freeway. Injuries to the soles of her bare feet indicated she had tried to flee from her attacker. She had sustained severe facial injuries consistent with a beating, and a shoe print on her right thigh indicated she had been held down during the beating. Tan had likely been raped more than once because her vaginal cavity was cut and contained a profuse amount of blood and semen. She died of asphyxiation by manual strangulation, her bra having been wrapped around her neck and apparently used as a ligature.

In 2002, the DNA profile obtained from the sperm recovered from Tan's body was matched to Goree. The chance of such a match was one in a hundred quintillion, which is a one followed by 18 zeros. When Goree was arrested in June 2002, he was 26 years old.

2

2. *The sentencing.*

Goree was sentenced on June 15, 2012, at which time he was 36 years old. He was sentenced under Penal Code section 190.5, subdivision (b),[1] which provides: "The penalty for a defendant found guilty of murder in the first degree, in any case in which one or more special circumstances enumerated in Section 190.2 or 190.25 has been found to be true under Section 190.4, who was 16 years of age or older and under the age of 18 years at the time of the commission of the crime, shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life."

In pronouncing sentence, the trial court began by saying, "I have to evaluate various facts and circumstances under 190.3. And under 190.5, the penalty for a murder with special circumstances is life without the possibility of parole [LWOP], unless the court in its discretion finds that there are factors in mitigation that would justify that." After noting various sentencing factors it had considered, the trial court said: "As I started the discussion, the presumptive penalty in this case, because the jury did in fact find the special circumstance to be true, is life imprisonment without the possibility of parole. [¶] I have to make a finding and exercise my discretion in order to change that. . . . [¶] At this time, I, therefore, elect not to exercise my discretion, and the sentence will be the sentence prescribed by law."

When defense counsel subsequently tried to challenge "the court's determination that . . . there is a presumption of LWOP in this case," the trial court replied, "Let me make it clear, I did not presume it was the ordained sentence. I weighed all the factors and circumstances, and I find this is the appropriate penalty."

**CONTENTION**

Goree's life-without-possibility-of-parole sentence constitutes cruel and unusual punishment.

---

[1] All further references are to the Penal Code unless otherwise specified.

3

## DISCUSSION

We agree with Goree that, in light of recent case law from both our Supreme Court and the United States Supreme Court, this matter must be remanded to the trial court for resentencing.

Goree was 17 years old when he murdered Dr. Tan. The United States Supreme Court has, in recent years, expressed concern about sentencing juvenile offenders to prison terms that prevent any possibility of rehabilitation and eventual release. In *Roper v. Simmons* (2005) 543 U.S. 551 [125 S.Ct. 1183], the court held that juveniles must be treated differently than adults when it comes to sentencing. "*Roper* established that because juveniles have lessened culpability they are less deserving of the most severe punishments. [Citation.] As compared to adults, juveniles have a ' "lack of maturity and an underdeveloped sense of responsibility" '; they 'are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure'; and their characters are 'not as well formed.' [Citation.] These salient characteristics mean that '[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.' [Citation.] Accordingly, 'juvenile offenders cannot with reliability be classified among the worst offenders.'. . . [¶] No recent data provide reason to reconsider the Court's observations in *Roper* about the nature of juveniles. As petitioner's *amici* point out, developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. . . . Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved character' than are the actions of adults." (*Graham v. Florida* (2010) 560 U.S. 48, 68, [176 L.Ed.2d 825].)

*Roper* held the imposition of capital punishment on juvenile offenders for any offense whatsoever violated the Eighth Amendment. *Graham* held the imposition of a life-without-possibility-of-parole sentence on a juvenile offender for a non-homicide offense violated the Eighth Amendment. *Miller v. Alabama* (2012) 132 S.Ct. 2455, 2469 [183 L.Ed.2d 407], held "the Eighth Amendment forbids a sentencing scheme that

4

*mandates* life in prison without possibility of parole for juvenile offenders" who commit homicide, although a trial court could in its discretion impose such a punishment. (Italics added.)

In *People v. Gutierrez* (2014) 58 Cal.4th 1354, our Supreme Court held: "[S]ection 190.5(b), properly construed, confers discretion on a trial court to sentence a 16- or 17-year-old juvenile convicted of special circumstance murder to life without parole or to 25 years to life, *with no presumption in favor of life without parole*. We further hold that *Miller* requires a trial court, in exercising its sentencing discretion, to consider the 'distinctive attributes of youth' and how those attributes 'diminish the enological justifications for imposing the harshest sentences on juvenile offenders' before imposing life without parole on a juvenile offender. [Citation.] Because the sentencing regime created by section 190.5(b) authorizes and indeed requires consideration of the distinctive attributes of youth highlighted in *Miller*, we find no constitutional infirmity with section 190.5(b) once it is understood not to impose a presumption in favor of life without parole." (*Id*. at pp. 1360-1361, italics added.)

The result in *Gutierrez* overturned the previous, long-standing interpretation of section 190.5 by California's lower courts: "For two decades, since *People v. Guinn* (1994) 28 Cal.App.4th 1130 . . . , section 190.5(b) has been construed by our Courts of Appeal and trial courts as creating a presumption in favor of life without parole as the appropriate penalty for juveniles convicted of special circumstance murder." (*People v. Gutierrez, supra,* 58 Cal.4th at p. 1360.) *Gutierrez* remanded for resentencing: "Because the two defendants here were sentenced before *Miller* in accordance with the interpretation of section 190.5(b) prevailing at the time [citation], we remand for resentencing in light of the principles set forth in *Miller* and this opinion." (*Id*. at p. 1361.) *Gutierrez* reasoned, "Although the trial courts in these cases understood that they had some discretion in sentencing, the records do not clearly indicate that they would have imposed the same sentence had they been aware of the full scope of their discretion. Because the trial courts operated under a governing presumption in favor of

5

life without parole, we cannot say with confidence what sentence they would have imposed absent the presumption." (*Id*. at p. 1391.)

Goree was sentenced on June 15, 2012, before either *Miller* (filed June 25, 2012) or *Gutierrez* (filed May 5, 2014) was decided.

Nevertheless, the Attorney General argues Goree's sentence was proper: "Because of recent amendments to the Penal Code, appellant's sentence falls outside the *Miller* rule because it affords him the possibility of parole." The Attorney General is referring to legislation enacted in 2012, which provides in pertinent part "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has served at least 15 years of that sentence, the defendant may submit to the sentencing court a petition for recall and resentencing." (§ 1170, subd. (d)(2)(A)(i).)

But *Gutierrez* has already rejected this argument: "[T]he potential for relief under section 1170(d)(2) does not eliminate the serious constitutional doubts arising from a presumption in favor of life without parole under section 190.5(b) because the same questionable presumption would apply at resentencing." (*People v. Gutierrez, supra,* 58 Cal.4th at p. 1385.) "If anything, a decision to recall the sentence pursuant to section 1170(d)(2) is a recognition that the initial judgment of incorrigibility underlying the imposition of life without parole turned out to be erroneous. Consistent with *Graham*, *Miller* repeatedly made clear that the sentencing authority must address this risk of error by considering how children are different and how those differences counsel against a sentence of life without parole '*before* imposing a particular penalty.' [Citation.]" (*Id*. at p. 1387.)

The Attorney General argues Goree's sentence did not violate *Gutierrez* because "the trial court expressly indicated that LWOP was not the presumptive sentence in this case." We disagree. The trial court did say, "Let me make it clear, I did not presume [LWOP] was the ordained sentence. I weighed all the factors and circumstances, and I find this is the appropriate penalty." But the court made this statement *after* pronouncing sentence, and before pronouncing sentence the court had said:

6

"[U]nder 190.5, the penalty for a murder with special circumstances is life without the possibility of parole, unless the court in its discretion finds that there are factors in mitigation that would justify that." The court also said: "[T]he presumptive penalty in this case . . . is life imprisonment without the possibility of parole. [¶] I have to make a finding and exercise my discretion in order to change that. . . . [¶] At this time, I, therefore, elect not to exercise my discretion, and the sentence will be the sentence prescribed by law." Given this larger context, the language cited by the Attorney General does not demonstrate the trial court understood life without possibility of parole was not the presumptive sentence.

Finally, the Attorney General argues the record shows the trial court did take into consideration Goree's age. We cannot agree. The trial court acknowledged the extensive evidence put on by the defense regarding Goree's organic brain injuries, neuropsychological impairments, borderline intellectual functioning, and severely dysfunctional home life. But the trial court's only apparent specific reference to Goree's juvenile status was the following remark: "Under factor 190.3(1), the age of the defendant, he was seventeen, nine months and five days at the time of this event." This was not sufficient to satisfy *Miller*'s requirement that "a trial court, in exercising its sentencing discretion, . . . consider the 'distinctive attributes of youth' and how those attributes 'diminish the penological justifications for imposing the harshest sentences on juvenile offenders' before imposing life without parole on a juvenile offender. [Citation.]" (*People v. Gutierrez, supra,* 58 Cal.4th at p. 1361.)

Given these circumstances, the appropriate course is to affirm Goree's convictions, but reverse his sentence and remand to the trial court for resentencing in accordance with the new case law from the United States Supreme Court and the California Supreme Court cited in this opinion.

## DISPOSITION

The judgment is affirmed in part, reversed in part, and remanded for resentencing. Goree's convictions are affirmed. His life-without-possibility-of-parole sentence is vacated and the matter is remanded to the trial court for a resentencing determination consistent with this opinion.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


KITCHING, J.


ALDRICH, J.

8